# United States Court of Appeals for the First Circuit

---

NATASHA GRACE; MINOR CHILD MG; MINOR CHILD MG2;
MINOR CHILD MG3; MINOR CHILD AG; MINOR CHILD MP,
Plaintiffs - Appellants,

v.

BOARD OF TRUSTEES, BROOKE EAST BOSTON;
BROOKE SCHOOL FOUNDATION, INC.,
Defendants - Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS, BOSTON

---

**BRIEF FOR THE DEFENDANTS - APPELLEES
BOARD OF TRUSTEES, BROOKE EAST BOSTON;
BROOKE SCHOOL FOUNDATION, INC.**

---

JOHN J. CLOHERTY III
First Circuit Bar #48991
**PIERCE DAVIS & PERRITANO LLP**
10 Post Office Square, Suite 1100
Boston, Massachusetts 02109
(617) 350-0950
jcloherty@piercedavis.com

Dated: February 13, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF THE ISSUES PRESENTED ........................................ 1

CONCISE STATEMENT OF THE CASE .............................................. 1

    *Facts Relevant to Issues Presented* ................................................ 1

SUMMARY OF ARGUMENT .............................................................. 6

ARGUMENT ........................................................................................ 6

    I.    Standard of Review ................................................................ 6

    II.   There was no Title IX Violation by School's Response to
        Alleged Peer-to-Peer Name-Calling ...................................... 8

        a.    Elements of Proof of a Title IX Violation ................ 9

        b.    The School's Attentive Responses Preclude Finding
            "Deliberate Indifference" ........................................ 11

        c.    Peer Harassment Not Reported or Known to School
            Officials Fails to Create Title IX Liability ................ 17

        d.    The Title IX Claim Fails because Teasing by Elementary
            Students is not Proof of Harassment "Based on Sex" .......... 20

        e.    Plaintiffs-Appellants Improperly Rely on Unauthenticated
            and Inadmissible Hearsay at Summary Judgment .................... 27

CONCLUSION ................................................................................... 34

CERTIFICATE OF COMPLIANCE ................................................... 36

CERTIFICATE OF SERVICE ............................................................ 37

# TABLE OF AUTHORITIES

CASES:

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ................................................................... 7

Bucci v. Essex Ins. Co.,
  393 F.3d 285 (1st Cir. 2005) ..................................................... 33

C.S. v. Madison Metro. Sch. Dist.,
  34 F.4th 536 (7th Cir. 2022) ...................................................... 32

Chongris v. Bd. of Appeals,
  811 F.2d 36 (1st Cir. 1987) ......................................................... 8

Cummings v. Premier Rehab Keller, P.L.L.C.,
  --- U.S. ---, 142 S. Ct. 1562 (2022) .......................................... 32

Danaipour v. McLarey,
  386 F.3d 289 (1st Cir. 2004) ............................................ 31-32, 33

Davis v. Monroe County Bd. of Educ.,
  526 U.S. 629 (1999) ................................................ 10, 12, 15, 21, 22

Doe v. Bradshaw,
  203 F. Supp. 3d 168 (D. Mass. 2016) ................................... 18, 19

Doe v. Oyster River Co-op. Sch. Dist.,
  992 F. Supp. 467 (D.N.H. 1997) .............................................. 25

Doe v. Pawtucket Sch. Dep't,
  969 F.3d 1 (1st Cir. 2020) ......................................................... 17

Ed Peters Jewelry Co. v. C & J Jewelry Co.,
  124 F.3d 252 (1st Cir. 1997) ..................................................... 31

Fitzgerald v. Barnstable Sch. Comm.,
  504 F.3d 165 (1st Cir. 2007), rev'd on other grounds,
  555 U.S. 236 (2009) ................................................... 11, 14, 15

ii

Fitzgerald v. Barnstable Sch. Comm.,
    555 U.S. 246 (2009) ............................................................................. 9

Flovac, Inc. v. Airvac, Inc.,
    817 F.3d 849 (1st Cir. 2016) ............................................................... 7

Frazier v. Fairhaven Sch. Comm.,
    276 F.3d 52 (1st Cir. 2002) ................................................... 10-11, 20

Garside v. Osco Drug, Inc.,
    895 F.2d 46 (1st Cir. 1990) ............................................................... 27

Gebser v. Lago Vista Indep. Sch. Dist.,
    524 U.S. 274 (1998) ..................................................................... 16, 17

Geshke v. Crocs, Inc.,
    740 F.3d 74 (1st Cir. 2014) ............................................................... 27

Gonzalez v. Exec. Airlines, Inc.,
    236 F.R.D. 73 (D.P.R. 2006) ............................................................. 31

Grella v. Salem Five Cent Sav. Bank,
    42 F.3d 26 (1st Cir. 1994) ................................................................... 8

Johnson v. Elk Lake Sch. Dist.,
    283 F.3d 138 (3d Cir. 2002) .............................................................. 19

Kollaritsch v. Michigan State Univ.,
    944 F.3d 613 (6th Cir. 2019), cert. denied, 141 S. Ct. 554 (2020) ...................... 14

Local 48 v. United Brhd. of Carpenters & Joiners,
    920 F.2d 1047 (1st Cir. 1990) ............................................................. 7

Martinez v. Novo Nordisk Inc.,
    992 F.3d 12 (1st Cir. 2021) ............................................................... 28

Miceli v. JetBlue Airways Corp.,
    914 F.3d 73 (1st Cir. 2019) ............................................................... 7

Morgan v. Town of Lexington,
    823 F.3d 737 (1st Cir. 2016) ................................................................................. 12

Oncale v. Sundowner Offshore Servs., Inc.,
    523 U.S. 75 (1998) ............................................................................................ 22

Patterson v. Hudson Area Sch.,
    724 F. Supp. 2d 682 (E.D. Mich. 2010) ............................................................. 25

Porto v. Tewksbury,
    488 F.3d 67 (1st Cir.), cert. denied, 552 U.S. 992 (2007) ................. 11, 13, 14, 15

Rivera-Rivera v. Medina & Medina, Inc.,
    898 F.3d 77 (1st Cir. 2018) ................................................................................. 27

Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.,
    647 F.3d 156 (5th Cir. 2011) ............................................................................... 25

Santiago v. Puerto Rico,
    655 F.3d 61 (1st Cir. 2011) .............................................................................. 9, 10

Seamons v. Snow,
    84 F.3d 1226 (10th Cir. 1996) ...................................................................... 23, 24

Sheinkopf v. Stone,
    927 F.2d 1259 (1st Cir. 1991) ............................................................................... 7

Smith v. Stratus Computer, Inc.,
    40 F.3d 11 (1st Cir. 1994) .................................................................................... 8

Swanger v. Warrior Run Sch. Dist.,
    346 F. Supp. 3d 689 (M.D. Pa. 2018) ........................................................... 19-20

Thomas v. Bd. of Trustees,
    667 F. App'x 560 (8th Cir. 2016) ....................................................................... 16

Tyrrell v. Seaford Union Free Sch. Dist.,
    792 F. Supp. 2d 601 (E.D.N.Y. 2011) ................................................................ 23

U.S. v. Bayard,
   642 F.3d 59 (1st Cir. 2011) ...................................................... 8

Vance v. Spencer County Pub. Sch. Dist.,
   231 F.3d 253 (6th Cir. 2000)................................................. 13, 14

Wolfe v. Fayetteville, Arkansas Sch. Dist.,
   648 F.3d 860 (8th Cir. 2011)................................................. 19, 24

Zeigler v. Rater,
   939 F.3d 385 (1st Cir. 2019) ...................................................... 6

## STATUTES:

20 U.S.C. § 1681(a) ........................................................... 9, 20
20 U.S.C. §§ 1681-1688 ......................................................... 9

Mass. Gen. L. ch. 233, §79G ................................................... 30

## RULES:

Fed. R. App. P. 28................................................................ 1

Fed. R. Civ. P. 56 ....................................................... 7, 28, 30

Fed. R. Evid. 801 .............................................................. 30
Fed. R. Evid. 803 ..................................................... 30, 31, 32
Fed. R. Evid. 805 .............................................................. 33
Fed. R. Evid. 901 .............................................................. 29

## REGULATIONS:

34 C.F.R. pt. 106................................................................ 9

## STATEMENT OF THE ISSUES PRESENTED

The Defendants-Appellees submit the following pursuant to Fed. R. App. P. 28(b) being dissatisfied with the Plaintiff-Appellant's statement of the issues:

1.    Whether the Defendants-Appellees' were entitled to Summary Judgment because the School's response to known incidents of the minor Plaintiff's peer-to-peer conflict did not constitute deliberate indifference to student harassment based on sex violative of Title IX?

## CONCISE STATEMENT OF THE CASE

Being dissatisfied with the Plaintiff-Appellant's Statement of the Case, pursuant to Fed. R. App. P. 28(b)(3), the Defendants-Appellees hereby submit the following:

### *Facts Relevant to Issues Presented*

On appeal, Plaintiffs-Appellants concede that the minor plaintiff "M.G. struggled to cope, he acted out, arriving late and talking during class, drawing attention to himself, struggling to comply with teachers' instructions, and generally souring his relationship with his sixth-grade teacher." See Pl. Br. p. 7. The summary judgment record established M.G. experienced peer conflict with his classmates and disobedience towards teachers. In response the School investigated and issued disciplinary consequences, but also met with the parent and psychological counselors to develop a behavioral plan to support M.G. The School Administration

was highly responsive, engaged and caring in addressing M.G.'s education. The School had detailed policies and practices addressing harassment and bullying prevention and the Mass. Department of Elementary and Secondary Education ("DESE") investigation concluded the School responses complied with applicable law. The School was not deliberately indifferent to any known claims of sex-based harassment under Title IX. This court must scrutinize Plaintiffs-Appellants' Brief because it is replete with characterizations unsupported by evidence, misstatements of the record evidence, and repeatedly references to alleged incidents of peer harassment which were never reported to School officials.

Brooke Charter School East Boston is a K-8 school and one of four campuses under the state approved public school charter. See JA66-67 ¶¶3-6.[1] The minor Plaintiff, M.G. was a student at Brooke East Boston for grades Four through Six, from 2015 to 2018. See JA70-79 ¶¶23-76. Plaintiff's mother Natasha Grace considered Brooke East Boston "a wonderful school" and testified "The Brooke, academically, is a great school." See JA69 ¶18, JA79 ¶76. Ms. Grace acknowledged that her son M.G. had disciplinary issues and that "He was defiant and everything

---

[1] Unless otherwise indicated, for brevity and clarity, citations to the Joint Appendix refer to the Defendants-Appellees' Rule 56.1 Statement of Material Facts, with particular paragraphs identified. (JA66-80). In turn, the cited paragraphs of the Defendants-Appellees Statement of Facts identify the precise pages of deposition testimony and documentary evidence contained in the accompanying exhibits in the Joint Appendix. (JA82-408).

towards adults because he didn't trust adults anymore." See JA69 ¶22. Ms. Grace regularly communicated with Brooke School Administrators with concerns about her son, always getting a response from the Dean of Students and meetings to voice her concerns. See JA69 ¶¶19-21. Ms. Grace's concerns with the administration were the effectiveness of their responses to M.G.'s issues, not the lack of response. See JA69 ¶21. She would complain that she didn't like how the Principal handled things, or was dissatisfied with the type or extent of discipline issued. See JA70 ¶23, JA71 ¶32, JA74 ¶47.

In Fourth Grade, Plaintiff M.G. had incidents of peer-to-peer conflict with a classmate M.V. involving pushing, tripping and M.G. calling the classmate "dumb", which were investigated, consequences issued, but not deemed to be "bullying" under school policies. See JA70-71 ¶¶23-29. Plaintiff also received discipline that year for disrespectful behavior towards a bus driver. See JA71 ¶30. There were no incidents during Fourth Grade where Plaintiffs reported to the School Administrators any name-calling using homosexual epithets. The first report concerning Plaintiff's peers calling him names was in Fifth Grade, when M.G. said unidentified students called him names, but M.G. said "he didn't care cause he's not gay nor does he want to be a transgender." See JA71¶34, JA73 ¶41. Plaintiff spoke to both the Dean of Students Ms. Dudley and his teacher Ms. Nissan about this, and Ms. Nissan responded by suggesting a book *Gracefully Grayson*, for M.G. to read. See JA71

¶34. Remarkably, neither M.G. nor his mother ever read the book, nor did any other classmates see the book left on M.G.'s desk.[2]  See JA71 ¶40.  The only Fifth Grade report of a homosexual epithet, beside the unidentified rumors that M.G. was "gay," was an occasion where a bus monitor spoke with a female student who said she didn't like M.G. "because I think he is gay."  See JA73 ¶42.  In response, Dean of Students Dudley investigated and gave counselling to the bus monitor.  See JA73 ¶¶43-44.  In Fifth Grade M.G. had two episodes of peer conflict with M.V. in the hallway and playground, wherein both students were disciplined, and there was no allegation of homosexual epithets reported to the School.  See JA73-74 ¶¶45-49.

In Sixth Grade, two episodes of homosexual epithets towards M.G. were reported and investigated.  See JA74-75 ¶¶50-54.  The first was found to have happened during summer camp before the school year, precluding discipline, and the second was older boys calling M.G. "skittles" which promptly resulted in discipline for both students.  See JA74-75 ¶¶50-54.  By Sixth Grade, Plaintiff's defiant classroom behavior increased, resulting in repeated Team Meetings between the parent, administration, and psychologist to develop behavioral plans to support M.G.  See JA75-76 ¶¶55-59.  Plaintiff's peer-to-peer conflict that year included

_____

[2] Plaintiff M.G.'s sworn testimony that no other classmates even saw the book directly contradicts the unsworn, unauthenticated statements attributed to M.G. in the therapist notes offered by Plaintiffs-Appellants in opposition to summary judgment.

receiving an online threat from a classmate E.D. which was taken seriously, investigated, and resulted in a suspension of the classmate. <u>See</u> JA76-77 ¶¶60-61. In May 2018, Plaintiff also witnessed a playground fight involving the student M.V., who was being escorted by a teacher back to school, when M.G. approached, and had to be kept separated from the student M.V., who was suspended from school for fighting. <u>See</u> JA77 ¶¶62-64. Plaintiff's final grievance is a preposterous claim that his Sixth Grade teacher tossing post-it notes on his desk was an assault, which caused Plaintiff's mother Ms. Grace to immediately travel to the school and confront the teacher in the middle of instructing a class. <u>See</u> JA77-78 ¶¶65-69. The School investigated, found no assault took place, and sent Ms. Grace a No Trespass letter to ensure she would not again disrupt the school. <u>See</u> JA78-79 ¶¶71-74. Ms. Grace thereafter withdrew her son from enrollment. <u>See</u> JA79 ¶75. The Massachusetts Department of Elementary and Secondary Education later investigated Plaintiff's claims and found the Charter School's investigations and responses complied with the applicable anti-bullying laws.[3] <u>See</u> JA79-80 ¶¶77-81.

---

[3] Indeed, Plaintiffs-Appellants concede the School took action to known instances of alleged harassment, such as disciplining students who called M.G. "skittles" (JA423; Pl. Resp. to S.O.F. at ¶53); meeting with Ms. Grace about her concerns about M.G.'s interactions with classmates to explain what steps were being taken (JA413; Pl. Resp. to S.O.F. at ¶¶19-21); and investigating the "post-it notes" incident (JA427; Pl. Resp. to S.O.F. at ¶71).

## SUMMARY OF ARGUMENT

The summary judgment record established M.G. experienced peer conflict with his classmates and disobedience towards teachers. In response the School investigated and issued disciplinary consequences, but also met with the parent and psychological counselors to develop a behavioral plan to support M.G. The School Administration was highly responsive, engaged and caring in addressing M.G.'s education. The School's attentive responses preclude finding the high standard of "deliberate indifference." The School cannot be held liable for alleged peer harassment that was not reported or known to school officials, because liability under Title IX for deliberate indifference requires proof of "actual knowledge." Teasing and name-calling by young Fourth through Sixth Graders, even if using homophobic epithets, is not proof of harassment "based on sex" under Title IX because in elementary schools, unlike the adult workplace, the children are still learning how to interact with their peers and often engage in conduct unacceptable among adults. Lastly, Plaintiffs-Appellants improperly rely on unauthenticated and inadmissible hearsay at Summary Judgment.

## ARGUMENT

### I.     Standard of Review

Appellate review of the entry of summary judgment is de novo. See Zeigler v. Rater, 939 F.3d 385, 392 (1st Cir. 2019). The rules mandate that the trial "court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a) (emphasis added). The summary judgment record must be "construed in the light most flattering to the nonmovant." Miceli v. JetBlue Airways Corp., 914 F.3d 73, 80 (1st Cir. 2019). When the motion is premised upon the absence of any genuine issue of material fact, the burden shifts to the nonmovant to identify, by means of materials of evidentiary quality, an issue of fact that is "more than 'merely colorable.'" Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Once the movant avers 'an absence of evidence to support the nonmoving party's case, ... the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir. 1991) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). While a court must examine the record in the light most favorable to the opposing party, "Rule 56 does not invite a court to enter the realm of surmise." Local 48 v. United Brhd. of Carpenters & Joiners, 920 F.2d 1047, 1051 (1st Cir. 1990). "[W]here elusive concepts such as motive or intent are at issue, summary judgment may be appropriate

if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994). This Court should ignore bald assertions and mere speculation as well as allegations "which have been conclusively contradicted by concessions or otherwise." Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

## II. There was no Title IX Violation by School's Response to Alleged Peer-to-Peer Name-Calling

Plaintiffs-Appellants' appeal is confined solely to the dismissal of their claim under Title IX.[4] Count I of the Complaint alleges that the minor Plaintiff M.G. was a victim of "sexual harassment under Title IX because male and female students and employees of School harassed him regularly in 4th, 5th, and 6th grade" and such harassment was "based on sex and gender-based stereotypes … by calling M.G. derogatory names in reference to his perceived homosexuality." See JA26, Pl. Compl. ¶¶82-83. The Complaint also alleges "Defendants knew that M.G. was repeatedly the target of physical bullying by M.V. due to M.G.'s perceived

---

[4] Plaintiffs-Appellants have thus abandoned on appeal the claims asserted under state and federal law in the sixteen other Counts II through XVII, and they are deemed waived. See U.S. v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011)(failure to brief an issue waives it). Moreover, "issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, [will also be] deemed waived for purposes of appeal." Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 36 (1st Cir. 1994).

homosexuality." <u>See</u> JA27, Pl. Compl. ¶84.  The Summary Judgment record refuted these allegations.

### a.    <u>Elements of Proof of a Title IX Violation</u>

Discrimination based on sex in programs or activities receiving federal education funds is prohibited by Title IX of the Education Amendments of 1972. <u>See</u> 20 U.S.C. §§ 1681-1688; <u>see also</u> 34 C.F.R. pt. 106.  Section 901(a) of Title IX provides: "No person in the United States shall, <u>on the basis of sex,</u> be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." <u>See</u> 20 U.S.C. § 1681(a) (emphasis added).  "The statute's only express enforcement mechanism, § 1682, is an administrative procedure resulting in the withdrawal of federal funding from institutions that are not in compliance, [however the U.S. Supreme] Court has recognized an implied private right of action." <u>Fitzgerald v. Barnstable Sch. Comm.</u>, 555 U.S. 246, 255 (2009).  "Two types of harassment are actionable under Title IX: quid pro quo harassment and hostile environment harassment." <u>Santiago v. Puerto Rico</u>, 655 F.3d 61, 73 (1st Cir. 2011).  Because quid pro quo harassment is not alleged or implicated here, this Court need only consider the elements of proof for hostile environment harassment.  <u>Id.</u>

"In general, a hostile environment claim under Title IX requires acts of sexual harassment that are so severe and pervasive as to interfere with the educational

opportunities normally available to students. To limn such a claim, the plaintiff must identify 'a cognizable basis for institutional liability.' This necessitates a showing that a federal funding recipient acted with deliberate indifference toward known acts of harassment occurring in its programs or activities." Santiago v. Puerto Rico, 655 F.3d 61, 73 (1st Cir. 2011) (citations omitted). "Title IX's 'actual knowledge' requirement demands that the official who is informed of the alleged harassment be a person who, at a minimum, has the authority to institute corrective measures." Santiago, 655 F.3d at 74. The U.S. Supreme Court addressed school district liability for peer harassment in Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 632 (1999). The Davis Court extended liability "in certain limited circumstances" where a School, as recipient of federal funding, may be "held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis, 526 U.S. at 643, 650.

Thus, to demonstrate liability for a hostile environment under Title IX, plaintiff must show: (1) that he "was a student, who was (2) subject to harassment (3) based upon sex; (4) that the harassment was sufficiently severe and pervasive to create an abusive educational environment; and (5) that a cognizable basis for institutional liability exists." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 66 (1st

Cir. 2002).  As for the fifth element of institutional knowledge: "To satisfy the fifth part of this formulation, the plaintiff [ ] must prove that a school official authorized to take corrective action had <u>actual knowledge</u> of the harassment, yet exhibited deliberate indifference to it."  <u>Id.</u> (emphasis added).  Deliberate indifference in the case of student-on-student harassment requires that the school's "response (or lack thereof) is clearly unreasonable in light of the known circumstances."  <u>Porto v. Tewksbury</u>, 488 F.3d 67, 73 (1st Cir. 2007).  It is not enough for a plaintiff to show "that the school system could or should have done more."  <u>Id.</u>  "[T]he fact that measures designed to stop harassment prove later to be ineffective does not establish that the steps taken were clearly unreasonable in light of the circumstances known by [a defendant] at the time."  <u>Id.</u> at 74. Title IX "does not require educational institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by [complainants]."  <u>Fitzgerald v. Barnstable Sch. Comm.</u>, 504 F.3d 165, 174 (1st Cir. 2007), <u>rev'd on other grounds</u>, 555 U.S. 236 (2009).

**b.    <u>The School's Attentive Responses Preclude Finding "Deliberate Indifference"</u>**

Deliberate indifference under Title IX is "a stringent standard of fault, requiring proof that a [defendant] disregarded a known or obvious consequence of [its] action or inaction."  <u>Porto v. Town of Tewksbury</u>, 488 F.3d 67, 73 (1st Cir.), <u>cert. denied</u>, 552 U.S. 992 (2007).  To be liable for deliberate indifference under

Title IX, "the harassment must take place in a context subject to the school district's control." <u>Davis</u>, 526 U.S. at 644-645 (1999). Liability may exist only where the school district "exercises substantial control over both the harasser and the context in which the known harassment occurs." <u>Id.</u> For purposes of this standard, a recipient's actions will be considered "deliberately indifferent" "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." <u>Davis</u>, 526 U.S. at 648. In the present case, Plaintiffs cannot meet this stringent standard as a matter of law.

A review of similar reported cases of Title IX claims in the context of peer-on-peer harassment is instructive. In <u>Morgan v. Town of Lexington</u>, 823 F.3d 737 (1st Cir. 2016), the court reiterated that an actionable claim requires sex or gender-based animus in the context of the bullying acts alleged. The <u>Morgan</u> case included allegations under Title IX that one of the bullying incidents involved peers pulling down the plaintiff's pants in front of other students, including girls. <u>Id.</u> The <u>Morgan</u> court reasoned that while in certain contexts the act of pulling down another student's pants might be considered a plausible violation of Title IX, in the context of the case as presented, sex or gender-based animus by the accused peers could not be inferred. <u>Morgan</u>, 823 F.3d at 745. The court further stated the other bullying acts were insufficient to bolster the single incident of conduct that the parents/student argued was sex or gender-based. <u>Id.</u> Thus, the allegations were not "sufficiently

'severe' and/or 'pervasive' to supply a sexual harassment claim under Title IX," and the court ruled in favor of the town.

In Porto v. Town of Tewksbury, 488 F.3d 67, 73-76 (1st Cir. 2007), the court concluded that even if a middle school student has been subjected to severe, pervasive, and objectively offensive harassment by another student, under Davis the student must provide evidence that the school system was "deliberately indifferent" to that harassment in order to prevail. In Porto, school officials responded to parents' complaints, separated the two students, imposed noncontact restrictions, and referred both to the school guidance counselor. Porto, 488 F.3d at 70-71. "By all indications, Tewksbury's methods were working" until the two boys were discovered together in a bathroom stall and one of them told a school facilitator that they had engaged in sexual intercourse. Porto, 488 F.3d at 74-75. In reversing the trial court's judgment for the plaintiffs, the court noted that "the fact that measures designed to stop harassment prove later to be ineffective does not establish that the steps taken were clearly unreasonable in light of the circumstances known by Tewksbury at the time."[5] Porto, 488 F.3d at 74.

---

[5] Plaintiffs-Appellants' reliance on the twenty-three year old Sixth Circuit case of Vance v. Spencer County Pub. Sch. Dist., 231 F.3d 253 (6th Cir. 2000) is misplaced. See Pl. Br. p. 30. The Sixth Circuit itself has not followed the Vance ruling, specifically correcting an error by stating in Vance "we *mistakenly opined* that a single incident of sexual harassment could satisfy a Title IX claim. But the Vance plaintiff had presented several instances of severe and pervasive sexual harassment, id., making the assertion *dicta*, so we are *not bound by it*." See

In Fitzgerald v. Barnstable School Comm., 504 F.3d 165, 178 (1st Cir. 2007), rev'd on other grounds, 129 S. Ct. 788, 792, 798 (2009), decided a few months after the Porto decision, the First Circuit considered facts it characterized as "grotesque" at the outset: peer-on-peer sexual harassment of a kindergarten student by a third grader on a school bus. Fitzgerald, 504 F.3d at 168-69. Again, looking to Davis for the legal standards of a Title IX sexual harassment claim, the court found that the plaintiffs had not shown that the defendants exhibited "deliberate indifference" to the plaintiffs' complaints of harassment. Fitzgerald, 504 F.3d at 173-75. The defendants' actions, which included meeting with the student and her parents, launching an investigation consisting of multiple interviews, cooperating with a separate police investigation, taking the police investigation into account when considering disciplinary options, and offering to place the student on a different bus,

---

Kollaritsch v. Michigan State Univ., 944 F.3d 613, 621 n.3 (6th Cir. 2019), cert. denied, 141 S. Ct. 554 (2020) (recognizing that the Supreme Court Davis case holds that a single incident cannot constitute pervasive harassment under Title IX) (emphasis added). The Vance case is factually distinguishable because it involved claims of actual sexually assaultive conduct towards the female student such as a male student snapping bras and grabbing the butt, a different male student threatening to have sex with her starting to take his pants off, another boy touching plaintiff on her chest and butt, culminating in claims she was "propositioned or touched inappropriately in virtually every class." Vance, 231 F.3d at 256-257 (6th Cir. 2000). There are no allegations in this case of sexually inappropriate touching. Furthermore, the First Circuit distinguished the Vance decision when ruling that a School acted reasonably in responding to plaintiff's complaint of inappropriate touching by separating the two students and sending them to the guidance counselor, precluding the claim of deliberate indifference as a matter of law. See Porto v. Town of Tewksbury, 488 F.3d 67, 76 (1st Cir. 2007).

were sufficient, in the court's view, to overcome the "deliberate indifference" standard imposed by Title IX and <u>Davis</u>. <u>Fitzgerald</u>, 504 F.3d at 172-73. The court acknowledged that:

> "[t]hese actions may not have constituted an ideal response to the complaint of harassment. In hindsight, there may be other and better avenues that the School Committee could have explored or other and better questions that could have been asked during the interviews. But Title IX does not require educational institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by parents. The test is objective – whether the institution's response, evaluated in light of the known circumstances, is so deficient as to be clearly unreasonable. The response here cannot plausibly be characterized in that derogatory manner."

<u>Fitzgerald</u>, 504 F.3d at 174.

In the present case, in light of the investigatory, preventative, and disciplinary steps the Defendant took in response to the <u>known</u> alleged harassing conduct, the School's conduct was appropriate and not "clearly unreasonable" as a matter of law. <u>See</u> <u>Porto</u>, 488 F.3d at 76. The Plaintiff-Appellant Ms. Grace concedes that the School frequently communicated with her, regularly set up meetings with her, and objects only to the handling or outcomes of her complaints. <u>See</u> JA69 ¶¶19-21, JA70 ¶23, JA71 ¶32, JA74 ¶47. The School did respond to the allegations of peer-on-peer conflict by investigating and disciplining student offenders when appropriate, consistent with school policies.[6] <u>See</u> JA70-71 ¶¶26, 28-29, JA73-75 ¶¶42-45, 47,

---

[6] Moreover, while not in dispute here, even a school district's "failure to comply with [its] regulations ... does not establish the requisite ... deliberate

50-54, JA76-77 ¶¶60-64.  The School did not identify any of the peer conflict as Plaintiff being a bullying victim, but instead, as DESE recognized, M.G.'s peer conflict involved M.G.'s "habits of initiating and engaging in oppositional interactions with his peers."  See JA70-71 ¶¶26, 29, JA73 ¶45, JA80 ¶80.  There is no evidence that any of the reported peer conflict was based on sex or perceptions of M.G.'s sexual preference, nor did Plaintiffs ever report to the school the peer conflict was so motivated.  The School system took affirmative steps to meet with Plaintiff, outside therapists and the School counselor to develop a behavioral support plan for M.G.  See JA75-76 ¶¶57-59.  There was no deliberate indifference to any known instances of harassment.

In contrast, Plaintiffs-Appellants vainly attempt to attach liability by pointing to alleged incidents of harassment of which the School had no actual knowledge. The School's investigating the isolated incidents of peer conflict does not mean the School had actual knowledge of other alleged harassment based on sex.  See, e.g., Thomas v. Bd. of Trustees, 667 F. App'x 560, 561 (8th Cir. 2016) (holding college's knowledge of student's uncorroborated prior charges of robbery, rape and sexual harassment were insufficient to establish that the college had actual knowledge of a

---

indifference."  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291–92 (1998). In Gebser, the Court noted that it has never held "that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements."  Id. at 292.

risk of harm from that student); see also Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291 (1998) (finding a single complaint of a teacher making inappropriate comments insufficient to create actual knowledge of a sexual relationship between the teacher and a student). The First Circuit has rejected allegations that "the 'superintendent and principal and other teachers' 'ha[d] knowledge or ought to have had knowledge' of the events" because "[s]uch constructive knowledge is plainly insufficient."[7] Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 7 (1st Cir. 2020). Here, the summary judgment record was devoid of evidence that the School officials had actual knowledge of any alleged harassment other than the incidents which the School investigated.

### c. Peer Harassment Not Reported or Known to School Officials Fails to Create Title IX Liability

The summary judgment record establishes that the School responded to every incident known to School officials. The Plaintiffs-Appellants' Brief only weakly addresses the scope of knowledge by "officials with the power to address the harassment" citing only three pieces of evidence: (1) an email from Ms. Grace complaining about the *Gracefully Grayson* book; (2) School Director Jon Clark's testimony; and (3) Dean of Students Yasenia Dudley's testimony. See Pl. Brief

---

[7] The First Circuit, however, allowed the Plaintiffs' claims arising from a student-on-student rape, and non-consensual touching by a teacher, to survive because the complaint sufficiently alleged actual knowledge by the School officials. See Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 8 (1st Cir. 2020).

pp. 24-25[8] (citing JA340, 735-736, 651-652, 661-662, 667, 672). These sources actually confirm the limited knowledge of School Officials, where Ms. Grace's email refers solely to the *Gracefully Grayson* book being given to M.G. after he reported "a rumor around that my son was gay or wanted to be a transgender"; and Mr. Clark's testimony cited is "that no one else had seen the note or the book"; while Ms. Dudley's testimony relates she investigated a summer camp rumor, the "skittles" comment, and the bus monitor's comment, while having no knowledge of "any other incident involving [M.G.] and people called him 'gay'." (JA 340; 735-736, 651-652, 661-662, 667, 672). Thus, other than the known incidents about which the summary judgment record establishes the School officials investigated and took action, there is no evidence to support the claims School officials had knowledge of any other improper peer conflict involving use of homophobic epithets.[9]

Plaintiffs-Appellants cannot show that School Officials had "actual knowledge" of the other alleged harassment and name-calling. <u>See</u> <u>Doe v. Bradshaw</u>, 203 F. Supp. 3d 168, 185 (D. Mass. 2016) (considering a Title IX claim

---

[8] Plaintiffs-Appellants also repeatedly cite to the Magistrate Judge's Report and Recommendation on Summary Judgment, which itself is not evidence, contains characterizations and conclusions, was rejected by the Trial Judge as to the lone Title IX claim being appealed here, and is immaterial given the <u>de novo</u> standard of review on appeal.

[9] Plaintiffs-Appellants Brief's repeated allegations of "unrelenting" or "daily" harassment are simply false and unsupported by the evidence.

based on sexual harassment and stating that "rumors did not rise to the level of actual knowledge"). The Judge in <u>Bradshaw</u> found the school lacked actual knowledge, stating "the case law is clear that only reliable and unambiguous reports have been deemed sufficient to provide actual knowledge." <u>Id</u>. at 185-86 (citations omitted). Indeed, it seems Plaintiffs-Appellants are urging this Court to adopt a novel and impossibly low deliberate indifference standard that not investigating "rumors" can trigger Title IX liability. Title IX does not require Schools to investigate "rumors," nor does the existence of "rumors" rise to the level of harassment under Title IX. <u>See, e.g.</u>, <u>Wolfe v. Fayetteville, Arkansas Sch. Dist.</u>, 648 F.3d 860, 862, 868 (8th Cir. 2011) (rejecting claim that "mere name-calling and rumors with sexual connotations are sufficient to meet Title IX" in case involving "gender-based epithets such as 'faggot,' 'queer bait,' and 'homo'"). Similarly, the Third Circuit has rejected a claim that a School had a duty to investigate rumors as a basis for liability under §1983, which has a lower burden than "deliberate indifference," reasoning that "[i]n the absence of any direct complaints made to school officials, the <u>mere floating around of unsubstantiated rumors</u> regarding a particular employee—particularly in the high school setting, which is notoriously rife with adolescent gossip—does not constitute the kind of notice for which a school district can be held liable under <u>Monell</u>'s 'policy or custom' requirement." <u>Johnson v. Elk Lake Sch. Dist.</u>, 283 F.3d 138, 144 n.1 (3d Cir. 2002) (emphasis added); <u>see also</u> <u>Swanger v. Warrior Run Sch. Dist.</u>,

346 F. Supp. 3d 689, 709 n.6 (M.D. Pa. 2018) ("mere rumors alone are insufficient to establish actual notice under Title IX, even assuming that [the school official] was aware of those rumors.")  In contrast, the School Dean, Ms. Dudley, did not recall whether Ms. Grace or M.G. ever told her of "rumors" about "name-calling."  <u>See</u> (JA656-657; Y. Dudley Depo. pp. 64-65).  Ms. Dudley did investigate, however, a report of rumored name-calling that happened during the summer outside of school and her investigation concluded no discipline was warranted.  <u>See</u> (JA659; Y. Dudley Depo. p. 69).  In short, the purported existence of "rumors" about M.G.'s sexual preference circulating among his peers does not constitute proof of "actual notice" by school officials.  <u>Frazier v. Fairhaven Sch. Comm.</u>, 276 F.3d 52, 66 (1st Cir. 2002) (requiring "the plaintiff [ ] must prove that a school official authorized to take corrective action had <u>actual knowledge</u> of the harassment, yet exhibited deliberate indifference to it.") (emphasis added).

> **d.**     <u>**The Title IX Claim Fails because Teasing by Elementary Students is not Proof of Harassment "Based on Sex"**</u>

A Title IX claim exists only if there is proof of harassment "based on sex." <u>See</u> 20 U.S.C. § 1681(a).  "Discrimination on the basis of sex is the sine qua non of a Title IX sexual harassment case, and a failure to plead that element is fatal." <u>Frazier v. Fairhaven Sch. Comm.</u>, 276 F.3d 52, 66 (1st Cir. 2002) (rejecting Title IX claim of female student who alleged school discipline matron peered into bathroom stall where plaintiff was relieving herself).  The U.S. Supreme Court has cautioned

against viewing childhood teasing as prohibited sexual harassment, because "schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. … Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it."[10] Davis, 526 U.S. at 651–652. The Supreme Court held that in these circumstances, "Damages are not available for simple acts of teasing and name-calling among school children, however, even where th[o]se comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." Davis, 526 U.S. at 651–652. Accordingly, it is not enough to establish that "a student has been teased … or called ... offensive names." Id. When discussing similar statutory language of Title VII, the Supreme Court has made clear that in all sexual harassment cases, the plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations," but

---

[10] Plaintiffs-Appellants' Brief argues case law discussing homophobic epithets uttered by adults (or even adolescents) as evidence of harassment "based on sex", however, the peers of M.G. were in fourth, fifth, or sixth grade when allegedly making hurtful comments, and at such an age there can be no inference of discriminatory intent.

in fact constituted discrimination "because of ... sex." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).

The summary judgment record demonstrates that M.G.'s alleged peer conflict does not qualify as harassment "based on sex" under case law interpreting Title IX. The entirety of Plaintiff's reported homosexual epithets were being called "gay" or "skittles" by different school children in isolated incidents.[11]  While certainly such name-calling may be hurtful and uncomfortable for an elementary school student, it is not enough to establish a Title IX violation when "a student has been teased … or called ... offensive names." Davis, 526 U.S. at 651–652.  Indeed, the female classmate's answer to the bus monitor's question that "I think he is gay" was a mere expression of opinion not directed to Plaintiff at all.  Significantly, nowhere in Plaintiff's M.G.'s reports of peer-to-peer conflict of pushing, tripping or threats from students M.V., E.D., or others is there any evidence or allegations the physical

---

[11] Significantly, nowhere in the minor Plaintiff M.G.'s deposition or his mother's deposition (or their interrogatories) did either party testify that Plaintiff M.G. was called the pejorative name "faggot."  Instead, Plaintiffs-Appellants point only to third-party counselling notes (Resp. #22) or a Police Report (Resp. #49). See (JA413-414, 422; Pl. Resp. to S.O.F. at ¶¶22, 49.  There is no evidence the School was ever told this word was used, or ever received the cited counselling notes.  Mr. Clark explicitly denied ever learning the word "faggot" being used, and denied ever receiving the Police Report filed by Plaintiffs.  See JA74 ¶¶49, 51.  Similarly, although the minor Plaintiff testified a classmate in fourth grade called him "Like the B word or a girl or gay," there is no evidence anything was known to the School other than the epithet "gay" or "skittles."  Compare JA559, M.G. Depo. p. 75 with JA70 ¶¶23-76.

contact was accompanied by sexually charged name-calling. Plaintiff's mother conceded he engaged in defiant behavior towards adults, and his peer conflict with classmates was found by investigators to be due to M.G.'s "habits of initiating and engaging in oppositional interactions with his peers." See JA70-71 ¶¶26, 29, JA73 ¶45, JA80 ¶80.

Other Federal Courts have rejected claims where "the alleged harassment consisted merely of insults, name-calling and pushing which, though upsetting to plaintiff, is not sufficiently severe or offensive as to be actionable under Title IX." Tyrrell v. Seaford Union Free Sch. Dist., 792 F. Supp. 2d 601, 623, 629 (E.D.N.Y. 2011) (rejecting plaintiff's claims that students calling her such names as "lesbian" and "carpet-muncher," and teasing her about a sexual encounter between herself and another female because such claims are "based upon her perceived lesbianism and/or bisexuality, not upon her gender.") For example, the Tenth Circuit rejected a plaintiff's Title IX claim that after a high school football team hazing wherein upper-classmen grabbed plaintiff "as he came out of the shower, forcibly restrained and bound to a towel rack with adhesive tape" and also taped his genital area and brought a girl into the locker room to view him. See Seamons v. Snow, 84 F.3d 1226, 1230 (10th Cir. 1996) (plaintiff alleged School's response to the hazing assault was sexually discriminatory and harassing and defendants expected him to conform to a macho male stereotype, as evidenced by their suggestion to him that he "should have

taken it like a man.")  The Tenth Circuit ruled that plaintiff "failed to allege facts sufficient to indicate that the conduct being challenged (which it must be remembered, post-dates the locker room assault) was 'sexual' in nature, as defined in the hostile environment context … that would suggest he was subjected to unwelcome sexual advances or requests for sexual favors, or that sex was used to contribute to a hostile environment for him."  <u>Seamons</u>, 84 F.3d at 1232-1233.  As further example, the Eighth Circuit rejected a plaintiff's claim that "mere name-calling and rumors with sexual connotations are sufficient to meet Title IX."  <u>Wolfe v. Fayetteville, Arkansas Sch. Dist.</u>, 648 F.3d 860, 862, 868 (8th Cir. 2011) (Plaintiff alleged he "was harassed several times per week including pushing, shoving, name-calling, and being falsely labeled as homosexual" including "gender-based epithets such as 'faggot,' 'queer bait,' and 'homo,'" while also alleging was punched, had his head slammed into a window, and was victim of a defamatory website Facebook page called 'Every One [sic] That Hates Billy Wolfe.'").  In <u>Wolfe</u> the School District submitted evidence that the "motive underscoring the misconduct was not sex-based … they did not perceive Wolfe as homosexual and they believed he conformed to typical male gender stereotypes," but instead the homosexual name-calling was "an angered response to Wolfe's mistreatment of other students [including that plaintiff] had previously bullied a friend of theirs suffering from cerebral palsy."  <u>Wolfe</u>, 648 F.3d at 862-863.  Similarly, another Federal Court

rejected a Title IX claim by a middle school student whose classmates called plaintiff names of "gay," "fag," "queer," "Mr. Clean" or "man boobs" because there was no evidence such name-calling was because of plaintiff's sex, sexual orientation or perceived sexual orientation, ruling "[s]uch teasing is not sufficient to establish a Title IX claim." See Patterson v. Hudson Area Sch., 724 F. Supp. 2d 682, 691 (E.D. Mich. 2010) (relying on contrary evidence that teasing due to plaintiff gaining about 40 pounds between the latter part of plaintiff's sixth grade year and the beginning of his seventh grade year).

It is clear that teasing and bullying based on personal animus are not actionable under Title IX. See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist., 647 F.3d 156, 165 (5th Cir. 2011) (reasoning there is nothing in the record to suggest that the harasser, in calling the female plaintiff a "ho," was motivated by anything other than personal animus, rather than "because of sex"). As one federal judge emphasized "that the standards relevant to the 'adult' workplace cannot be imported wholesale into the educational context, particularly when young children are involved"; adding "[n]ame-calling, teasing, and even physical touching take on a different significance when they occur between children, and are also more common." Doe v. Oyster River Co-op. Sch. Dist., 992 F. Supp. 467, 476 (D.N.H. 1997). In the present case, there are no allegations of a sexual assault or any sexual touching by classmates. The objectionable epithets of "gay" and "skittles" alone

cannot suffice to show bullying "because of sex."  Nor is there any evidence that Plaintiff M.G.'s peer conflict of tripping, pushing, or striking was done by his classmates "because of Plaintiff's sex." There is no evidence Plaintiff was disadvantaged in the terms or conditions of his education to which members of the other sex are not exposed.  Alleging name-calling simply tinged with sexual connotations is not sufficient.  This is merely a case where a Title IX claim is tacked onto circumstances reciting Elementary School personality conflicts not arising "because of sex."

There is also no evidence that teaching staff engaged in harassing conduct of the minor M.G. "based on sex."  The only teaching staff conduct allegedly "based on sex" was a teacher leaving the book *Gracefully Grayson* on his desk and a bus monitor purportedly telling M.G. to be less "flamboyant" with his hands.  A teacher sharing the book *Gracefully Grayson* is not evidence of sex-based harassment, but rather an effort by the teacher to console a child, and Plaintiffs testified they never read the book, and no other classmates saw the book except M.G.'s friend to whom he showed the book on the bus ride home.  See JA71-72 ¶¶34-40.  There is no evidence the Plaintiffs-Appellants ever reported to School Officials the alleged "flamboyant hands" comment by the Bus Monitor.  See JA421, Pl. Resp. to S.O.F. at ¶42; JA450, N. Grace Depo. p. 84 (not alleging ever reported the "flamboyant hands" comment by Ms. Reed to the School).  The purported comment by the bus

26

monitor telling Plaintiff to be less "flamboyant" itself cannot be deemed harassment "because of sex," and furthermore this comment is inadmissible hearsay testimony by Ms. Grace about an interaction she did not witness. See JA450, N. Grace Depo. p. 84; see also Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014) ("'It is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted.")

### e. Plaintiffs-Appellants Improperly Rely on Unauthenticated and Inadmissible Hearsay at Summary Judgment

It is well-settled that "[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment." See Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 89 (1st Cir. 2018) (rejecting Plaintiff's reliance on her deposition testimony repeating out-of-court statements by work colleagues as to amounts of wages they earned in discrimination claim against employer). "Thus, absent a showing of admissibility—and none was forthcoming here—appellant may not rely on rank hearsay, … to oppose proper motions for summary judgment. See Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) (rejecting Plaintiff's reliance on interrogatory answer describing third-party expert witness' testimony where expert witness Physician did not himself verify the description of his anticipated testimony). The First Circuit has repeatedly held that "statements by nonparties about what other nonparties said or thought cannot suffice to create a genuine dispute of material fact (at least absent a showing that the statements can

'be presented in a form that would be admissible in evidence.)'" <u>Martinez v. Novo Nordisk Inc.</u>, 992 F.3d 12, 18 (1st Cir. 2021) (citing Fed. R. Civ. P. 56(c)(2) and prior case law). "Nor do plaintiffs' own beliefs and impressions suffice." <u>Id.</u> Unfortunately, the Plaintiffs-Appellants repeatedly cite to rank hearsay in a failed effort to survive summary judgment. The hearsay includes (1) the unauthenticated Therapist Notes containing out-of-court statements by the minor Plaintiff (some of which contradict Plaintiff's sworn deposition testimony); (2) Ms. Grace's testimony about events occurring at the School outside her presence; and (3) hearsay statements in a Police Report or police email never provided to School Officials. The trial court awarded summary judgment even considering this hearsay evidence, stating "even if the evidentiary objections made by the defendants were resolved in favor of the plaintiffs, the plaintiffs have failed to demonstrate a triable issue as to deliberate indifference, an essential element of a Title IX claim." <u>See</u> (Pl. App. 48-49) Ct. Order Adopting In Part and Rejecting In Part Report and Recommendation (Doc. #68) (Aug. 30, 2022).

On appeal, Plaintiffs-Appellants Brief repeatedly cites to the minor Plaintiff's purported statements to his therapist as factual evidence. <u>See, e.g.</u>, Pl. Br. pp. 3-7 ("fact" section citing therapist notes found at JA811-887). This includes relying on hearsay statements by M.G. to his therapist which contradict M.G.'s sworn deposition, such as telling the therapist "all the other kids were laughing and

pointing" at the *Gracefully Grayson* book, when M.G. testified he quickly put the book away and no one else in his class even saw the book, and he only showed the cover to a friend on the bus ride home.[12] Compare Pl. Br. p. 4 with JA377-381, M.G. Depo. pp. 88-92. The Plaintiffs-Appellants' Brief also cites the unauthenticated Therapist Notes asserting psychiatric diagnoses of M.G. (Pl. Br. p. 4), as well as for the proposition that M.G.'s "classmates called him 'gay' and a 'faggot' on a daily basis (Pl. Br. p. 15). In contrast, the sworn testimony of Mr. Clark for the School established that there was never any report to the school nor any evidence ever found through investigation that another student used the epithet "faggot" towards M.G. See JA74 ¶51.

As a threshold matter, the Therapist Notes are not authenticated in any way. See Fed. R. Evid. 901 (governing authentication of evidence). In total, Plaintiff submitted three exhibits consisting of excerpts of the unauthenticated Therapist Notes, which are rife with hearsay statements of both the minor Plaintiff M.G. and his mother Plaintiff Natasha Grace. See JA811-887. The Therapist Note exhibits were not authenticated under Massachusetts state law, nor accompanied by any

---

[12] The Therapist Notes also contradict other sworn testimony about the "skittles" incident when reporting M.G. stating "that Ms. Reed made no attempt to stop the teasing and did not make the upper grade students apologize" which contradicts Plaintiff's own admission that the "School disciplined the said student who called M.G. 'Skittles' because Ms. Reed overheard the derogatory discriminatory name directed at M.G." See JA423, Pl. Resp. to Stmt. Facts at ¶53.

sworn attestation from the Keeper of Records.  See Mass. Gen. L. ch. 233, §79G (law governing evidence of medical and hospital services in state court).  In addition, statements contained within the Therapist's Notes are inadmissible hearsay that cannot be considered for the truth of the matter asserted.  See Fed. R. Evid. 801(c) (defining Hearsay).  The statements contained in the Therapist Notes are not made on personal knowledge of the Therapist, Ms. Paulette Sewell-Reid, are not sworn under oath by Ms. Sewell-Reid, and do not contain facts that are admissible in evidence due to multiple hearsay contained therein.  See JA811-887; see also Fed. R. Civ. P. 56(c)(4) (for summary judgment a witness' "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")

Nor are the hearsay statements contained within the Therapist Notes admissible under any exceptions to the Hearsay rule.  Federal Rule of Evidence 803 sets forth "Exceptions to the Rule Against Hearsay--Regardless of Whether the Declarant Is Available as a Witness" which contains an exception for:

> "(4) Statement Made for Medical Diagnosis or Treatment. A statement that:
> (A) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and
> (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."

<u>See</u> Fed. R. Evid. 803(4).[13]  Under Rule 803(4), there are three requirements for the admission of such out-of-court statements: "(1) the statements must be made for purposes of diagnosis or treatment (2) about (i) medical history (ii) or past or present symptoms, pain, or sensations or (iii) about the inception or general character of the cause or external source thereof (3) insofar as they are reasonably pertinent to diagnosis or treatment." <u>Danaipour v. McLarey</u>, 386 F.3d 289, 297 (1st Cir. 2004). In general, under Rule 803(4), "the declarant's motive to promote treatment or diagnosis is the factor crucial to reliability." <u>Danaipour</u>, 386 F.3d at 298.  The First Circuit recognized that in cases involving minors, statements in medical records by parents may not be reliable because "sexual abuse cases, especially where one parent accuses the other of abuse, the motives and incentives of the reporting parent may be mixed or, indeed, may <u>not</u> be to tell the truth. It may be clear from the circumstance or context that the parental report of a child's statement of abuse to a doctor is made for purposes other than for diagnosis or treatment." <u>Danaipour</u>, 386

---

[13] The Therapist Notes of Ms. Paulette Sewell-Reid do not specify her credentials other than the use of the initials "LMHC" which presumably mean "Licensed Mental Health Counsellor," and it does not appear she is a physician, psychiatrist or even a psychologist.  As one federal judge advised, he "always pays heed to the fact that psychologists are not psychiatrists, and the Court will not admit the testimony of a treating psychologist as an expert until verifying that the patient was referred to the psychologist by a psychiatrist, and further verifying that the psychologist qualified by 'knowledge, skill, experience, training, or education.'" <u>Gonzalez v. Exec. Airlines, Inc.</u>, 236 F.R.D. 73, 82 (D.P.R. 2006) (citing <u>Ed Peters Jewelry Co. v. C & J Jewelry Co.</u>, 124 F.3d 252, 259 (1st Cir. 1997)).

F.3d at 298 (emphasis in original)(citation omitted). Both the minor Plaintiff M.G. and his mother Ms. Grace were aggrieved by what they perceived as improper discipline of M.G. and certainly had a motive other than seeking diagnosis or treatment when making statements to the Therapist. Finally, the medical treatment exception under Rule 803(4) is inapplicable because the U.S. Supreme Court has recently ruled that emotional distress damages are not available for claims made under federal statutes, like Title IX, that arise from the Spending Power of Congress. See, e.g., Cummings v. Premier Rehab Keller, P.L.L.C., --- U.S. ---, 142 S. Ct. 1562, 1571-1572 (2022) (holding emotional distress damages are not recoverable in private actions to enforce the antidiscrimination provisions of the Rehabilitation Act or the Patient Protection and Affordable Care Act (ACA), since both statutes were enacted pursuant to the Spending Clause); see also C.S. v. Madison Metro. Sch. Dist., 34 F.4th 536, 541 (7th Cir. 2022) (stating Title IX is a Spending Clause statute because "In the case of Title IX, the terms are clear: a school district accepting federal funds promises to not use those funds to discriminate on the basis of sex.") Thus, under Cummings, the purported non-hearsay purpose of the disputed evidence of therapist notes and Natasha Grace's testimony is not even relevant because emotional distress damages are not available under Title IX.

The therapist notes also contain totem-pole hearsay (or hearsay within hearsay): the Therapist Notes (hearsay) contain out-of-court statements by the minor

M.G. (hearsay) reciting content of epithets and teasing by unidentified peers that occurred in school (hearsay).  See Fed. R. Evid. 805 (Hearsay within Hearsay is not admissible unless "each part of the combined statements conforms with an exception to the rule").  "Sometimes, when the declarant of an out-of-court statement is unknown, there is less certainty that the statement was made for the purpose of treating or diagnosing the patient, and the statement itself may not bear the indicia of that purpose."  Bucci v. Essex Ins. Co., 393 F.3d 285, 298 (1st Cir. 2005).  The First Circuit cautioned "[i]n a situation such as this where there are reasons to look skeptically on the motives of the declarant, the context in which the statements are made is relevant to whether they bear adequate indicia of trustworthiness." Danaipour, 386 F.3d at 298.  Here, the statements of M.G. reciting verbal statements by unidentified classmates are hearsay within hearsay barred by Rule 805 and lacking any indicia of reliability.

Plaintiffs-Appellants' Brief also improperly relies upon the Plaintiff Natasha Grace's hearsay testimony regarding events occurring at the school outside of her presence.  The primary error is the testimony of comments by a bus monitor that M.G. had "flamboyant hands."  See Pl. Br. pp. 3, 23-24 (citing JA451).  Ms. Grace, however, was not on the school bus at the time of the events and was not present to hear anything said by the School Bus monitor Ms. Reed.  The testimony by School Dean Dudley about her investigation of the bus incident did not contain any mention

of "flamboyant hands." See JA73 ¶¶42-44. Thus, the only evidence of the "flamboyant hands" comment is the inadmissible hearsay testimony of Plaintiff Natasha Grace.

Lastly, Plaintiffs-Appellants' Brief cites to a police report filed by Ms. Grace about an alleged peer-to-peer altercation involving M.G. See Pl. Br. p. 3 (citing JA782) as well as to email between Ms. Grace and a Boston police officer See Pl. Br. p. 5 (citing JA960). The School Director Clark's sworn statement expressly avers "no such police reports were ever provided to the Brooke Charter Schools, nor did Natasha Grace make such reports of name-calling to the Brooke Charter Schools directly."[14] See JA74 ¶49. Furthermore, the email Ms. Grace sent to a Police Officer is wholly inadmissible for the proposition that the School "failed to implement these [police] recommendations" which the email on its face is devoid of any police "recommendations" to the School nor was it communicated to the School. See Pl. Br. p. 5 (citing JA960).

## CONCLUSION

For the foregoing reasons, the Defendants-Appellees, Brooke Charter Schools Board of Trustees and Brooke School Foundation, Inc., respectfully request that this Honorable Court Affirm the District Court Granting their Motions for Summary

---

[14] Similarly, Dean of Students Ms. Dudley testified "[t]his police report did not come to me." See Pl. Mot. Leave to File Late Resp. (Doc. #66) at p. 9 of 10 (emphasis added).

Judgment, Ordering Judgment for the Defendants of all Counts of the Plaintiff's Complaint against them, with prejudice and costs, and such other relief this Court deems just and proper.

Respectfully submitted,

The Defendants-Appellees,
BROOKE CHARTER SCHOOLS
BOARD OF TRUSTEES and BROOKE
SCHOOL FOUNDATION, INC.

By their Attorneys,
**PIERCE, DAVIS & PERRITANO, LLP**

/s/ John J. Cloherty III
JOHN J. CLOHERTY III
First Circuit Bar #48991
10 Post Office Square, Suite 1100
Boston, Massachusetts 02109
(617) 350-0950
jcloherty@piercedavis.com

Dated: February 13, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

I.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(A)(1) and Fed. App. P. 32(a)(7)(B)(1) because this brief contains 8,738 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

II.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

/s/ John J. Cloherty III

JOHN J. CLOHERTY III
First Circuit Bar #48991
PIERCE, DAVIS & PERRITANO, LLP
10 Post Office Square, Suite 1100
Boston, Massachusetts 02109
(617) 350-0950
jcloherty@piercedavis.com

Dated: February 13, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2023 this document was filed electronically with the United States Court of Appeals for the First Circuit by using the CM/ECF system. A copy of this document will be sent by using the CM/ECF system upon:

Esthena L. Barlow
Madeline Meth
Brian Wolfman
Georgetown University Law Center
Appellate Courts Immersion Clinic
600 New Jersey Avenue, Suite 312
Washington, DC 20001
Direct: 802-989-5102

Matthew Calabrese
Romanus C. Maduabuchi
Elliott O'Brien
Nathan Winshall
Keypoint Law Group LLC
65A Flagship Drive
North Andover, MA 01845

/s/ John J. Cloherty III

JOHN J. CLOHERTY III
First Circuit Bar #48991
PIERCE, DAVIS & PERRITANO, LLP
10 Post Office Square, Suite 1100
Boston, Massachusetts 02109
(617) 350-0950
jcloherty@piercedavis.com